## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

_____

|  |  |  |
|---|---|---|
| Estate of Nicholas Sacco, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Docket No. 1:20-CV-00447- JL |
| v. | ) | |
| | ) | |
| Hillsborough County House of Corrections, | ) | |
| American Institutional Medical Group, | ) | |
| Christopher Braga, MD, | ) | |
| Christopher Schwieger, PA, | ) | |
| Bryanna Gue, RN | ) | |
| Katelyn Hrubiec, LPN | ) | |
| Nicole Masci, LPN | ) | |
| Erica Gustafson, LPN | ) | |
| Laura Morrison, LPN | ) | |
| Dorothea Malo, LPN | ) | |
| Luella Bancroft, RN | ) | |
| Kate Coulombe, LPN | ) | |
| Doe Defendants 1-30 | ) | |
| | ) | |
| Defendants | ) | |

_____ )

## HILLBOROUGH COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Defendants Hillsborough County Department of Corrections ("Hillsborough County") and the individual nursing defendants, Bryanna Gue, Katelyn Hrubiec, Nicole Masci, Erica Gustafson, Laura Morrison, Dorothea Malo, Luella Bancroft, and Kate Coulombe ("Nurse Defendants") submit this Memorandum of Law in Support of Motion to Dismiss and request that the Court dismiss all claims asserted against the individual nursing defendants and the negligence claim asserted against Hillsborough County.

## PRELIMINARY STATEMENT

The plaintiff initiated this action against Hillsborough County, its outside medical providers, and unnamed Doe Defendants, asserting that the various defendants failed to provide Nicholas Sacco ("Sacco") with appropriate medical care while he was incarcerated as a pre-trial detainee at the Valley Street Jail ("VSJ").  The plaintiff specifically alleges that the defendants failed to properly treat Mr. Sacco for withdrawal symptoms associated with his heroin use and that Mr. Sacco died as a result of the alleged improper treatment.  The plaintiff recently filed an Amended Complaint asserting claims against every employee of the Hillsborough County nursing staff who had any contact with Sacco during his five (5) days at VSJ.

The Nurse Defendants now move to dismiss the claims asserted against them because the allegations in the Amended Complaint, even when construed in a light most favorable to the plaintiff, fail to satisfy the heightened standard necessary to establish deliberately indifferent medical care.  Hillsborough County and the Nurse Defendants are also entitled to dismissal of the negligence claims because they are immune from liability for negligence pursuant to RSA 507-B:5 since the plaintiff's claims do not arise out of the ownership, occupation, maintenance, or operation of a motor vehicle or premises.  For these reasons, and for the additional reasons discussed herein, these defendants request that the Court dismiss the deliberate indifference and negligence claims.

## STATEMENT OF MATERIAL FACTS

1.      Nicholas Sacco was booked as a pre-trial detainee at VSJ on May 16, 2019 at approximately 2:38 p.m. on theft-related charges for a 72-hour hold.  See Amended Complaint ("AC") at ¶ 21-22.  Since weekends are not counted for the hold, Sacco was scheduled to be released on May 21, 2019.  Id.

2

2.       During the booking process on May 16th, Nurse Bryanna Gue completed a Mental Health Intake Screening in which Sacco reported that he had asthma and used an inhaler and was allergic to dairy products.  See AC at p. 8.  Sacco denied drug or alcohol use.  Id.

3.       On May 17, 2019, Nurse Katelyn Hrubiec attempted to complete a Medical History and Screening form for Sacco, but was unable to do so because Sacco had been transported to Court for a hearing.  See AC at p. 9.

4.       On May 18, 2019 at 9:20 p.m., Sacco reported to Nurse Nicole Masci that he was feeling dizzy.  See AC at p. 9.  At that time, Sacco reported for the first time that he was detoxing from 5 grams of heroin per day, and that he last used heroin 2 days ago.  Id.  Nurse Masci immediately placed Sacco on a detoxification watch and informed Sacco that he would be moving cells to facilitate the detox watch.  Id.  Sacco replied "no, it's okay, I just need to sleep, you don't have to do that."  Id.  Nurse Masci took Sacco's vitals and his blood pressure was 128/84 and his pulse was 112.  Id.

5.       Once Sacco was placed on detoxification watch, correctional officer observed him every 15 minutes through the remainder of his time at VSJ in accordance with the detox procedure.  See AC at p. 10-13.

6.       Nurse Erica Gustafson met with Sacco on May 18th at approximately 10:30 p.m. after he requested to see a nurse because of his asthma.  See AC at p. 9-10.  Sacco exhibited no signs of shortness of breath or wheezing.  Id.  He then admitted that he was not having an asthma issue and was not having trouble breathing.  Id.  He stated he was dizzy and wanted to go to the hospital.  Id.  He also stated he was detoxing.  Id.  Nurse Gustafson advised Sacco she was about to do detox checks and would follow up on her return.  Id.  She advised him to relax and stay in bed when possible and gave him a Styrofoam cup for hydration.  Id.

3

7.      Nurse Gustafson completed the detox check at 11:45 p.m.  See AC at p. 10.  At that time, Sacco's standing blood pressure was 112/74 and pulse was 128.  Id.  He was alert and oriented, upright, and had a steady gait.  Id.  The notes indicate increased appetite, fluids, and sleep, and complaints of vomiting/nausea.  Id.  Sacco did not indicate he wanted to go to the hospital.  Id.

8.      Nurse Gustafson returned to Sacco's cell at 1:00 a.m. on May 19, 2019.  See AC at p. 10.  At that time, Sacco told Nurse Gustafson that he was detoxing from alcohol and benzos and that he had only reported heroin before because he "forgot."  Id.  Sacco further stated that he took benzos without a prescription and got it off the street "whatever I can get and as much as possible every day."  Id.  Nurse Gustafson took a urine sample, which tested positive for Fentanyl, but negative for all other substances.  Id.

9.      Nurse Gustafson returned to Sacco's cell two hours later at 3:00 a.m.  See AC at p. 10.  Sacco complained of restlessness and leg cramps.  Id.  Nurse Gustafson explained these are typical detox symptoms and are not abnormal.  Id.  Sacco asked for medication or to go to the hospital.  Id.  Nurse Gustafson explained the medication is not given during third shift and that the medical staff would continue to monitor his situation.  Id.

10.     Nurse Laura Morrison performed a detox check on Mr. Sacco at 8:15 a.m. on May 19, 2019.  See AC at p. 11.  Sacco's vitals remained consistent with his prior readings, with a standing blood pressure of 106/70 and a standing pulse of 122.  Id.  Mr. Sacco's only complaint was some reported vomiting and nausea.  Id.

11.     Nurse Morrison followed up with Sacco at 3:15 p.m. on May 19, 2019.  See AC at p. 11.  At that time, Sacco reported no complaints of nausea, vomiting or diarrhea and stated he was doing a "little better."  Id.

4

12.     Nurse Dorothea Malo performed a detox check on Mr. Sacco at 5:00 p.m. on May 19, 2019.  See AC at p. 11.  Sacco reported restlessness, agitation, lightheadedness and no energy.  Id.  His vitals remained in the same range, with his standing blood pressure at 114/76 and standing pulse at 125.1  Id.

13.     On May 20, 2019, Nurse Gustafson performed another detox check on Sacco at 12:15 a.m.  See AC at p. 12.  Sacco was noted to be alert and oriented with a slow steady upright gait.  Id.  He reported complaints of aches, cold sweats, dizziness, lightheadedness, recklessness, lack of sleep, and decreased appetite.  Id.  He was taking increased fluids.  Id.  His vitals once again remained in the same range, with his standing blood pressure at 117/70 and his standing pulse at 111.  Id.

14.     Nurse Luella Bancroft examined Sacco at 5:30 a.m. on May 20, 2019.  See AC at p. 12.  Mr. Sacco complained of shortness of breath and feeling lightheaded.  Id.  Nurse Bancroft concluded his lungs were clear bilaterally and that Sacco was not in distress.  Id.  She recommended that he slow down his breathing.  Id.

15.     Nurse Katelyn Hrubiec performed another detox check on Sacco at 8:12 a.m. on May 20, 2019.  See AC at p. 12.  Sacco denied vomiting or diarrhea and indicated he had increased his meals and potentially fluids.  Id.  He reported nausea and restlessness.  Id.  Again, his vitals remained in the same range, with a standing blood pressure at 114/68 and standing pulse of 114.  Id.

16.     Nurse Hrubiec completed the Medical History and Screening form at 12:55 p.m. on May 20, 2019.  See AC at p. 13.  The Medical History and Screening form confirmed Sacco's

---

[1] The Amended Complaint includes Interdisciplinary Progress Notes for Nurse Malo with a time of 5:55 p.m. on May 19, 2019.  See AC at p. 12.  These notes record Nurse Malo's observations from the earlier detox check rather than a separate evaluation.

report that he used 5 grams of heroin every day his last use was on May 15, 2019.  Id.  It further stated that Sacco reported that he becomes restless when he stops taking drugs, uses tobacco, and is currently detoxing.  Id.  Nurse Hrubiec also noted that Sacco's vitals remained consistent with blood pressure of 128/84 and pulse of 108.  Id.

17.     Nurse Kate Coulombe performed a detox check on Sacco at 4:00 p.m. on May 20, 2019.  See AC at p. 13.  Sacco denied vomiting or diarrhea and reported he was drinking fluids and eating.  Id.  He complained of nausea and reported cold sweats.  Id.  No further issues were reported.  Id.  His vitals were in a similar range, with a standing blood pressure of 112/64 and a standing pulse of 98.  Id.

18.     On May 21, 2019, Nurse Luella Bancroft performed a detox check on Sacco at 12:32 a.m.  See AC at p. 14.  Sacco was noted to be diaphoretic and his pupils were dilated.  Id.  His standing blood pressure was slightly lower at 100/50 and his pulse was 101.  Id.

19.     On May 21, 2019 at 8:15 a.m., Officer Justin Goulding was conducting medication pass with Nurse Masci.  See AC at p. 14.  When they arrived at Sacco's cell, his cellmate stated that Sacco was in "rough shape."  Id.  Sacco crawled to the door and said he was "not good."  Id.  Nurse Masci noted he appeared lethargic and nauseated and vomited green bile.  Id.  Nurse Masci immediately requested more medical staff for assistance.  Id.  Nurse Morrison arrived soon afterwards, along with PA Christopher Schwieger, who was at VSJ on other matters.  Id.   911 was contacted and PA Schwieger started chest compressions as Sacco was no longer responsive.  Id.  Nurse Masci administered Narcan.  Id.  First aid continued until EMS arrived at 8:34 a.m. and assumed care  Id.  EMS transported Sacco to Elliot Hospital.  Id. at p. 15.

20.     The Amended Complaint alleges that Sacco was pronounced dead in May 22, 2019 at 6:51 p.m.  See AC at ¶ 21.  The Amended Complaint alleges that the autopsy report identified the cause of death as "complications from opioid withdrawal."  Id. at ¶ 27.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Coll. Hill Props., LLC v. City of Worcester, 821 F.3d 193, 196 (1st Cir. 2016).  The court must "take the complaint's well-pleaded facts as true," and "draw all reasonable inferences in the plaintiff's favor."  Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018).  But "[w]ell-pleaded facts must be 'non-conclusory' and 'nonspeculative.'" Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Id. Where, as here, the plaintiff has alleged that several defendants violated Sacco's constitutional rights, the complaint must allege facts to support claims against each individual.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

## ARGUMENT

### A.     Plaintiff's Section 1983 Claim for Deliberately Indifferent Medical Care (Count I) Against the Nurse Defendants Fails as a Matter of Law

A pre-trial detainee's Section 1983 claim for constitutionally inadequate medical care is grounded in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment.  Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002).  The applicable standard, however, is the same under both the Fourteenth and Eighth Amendment.  Id. (relying on deliberate indifference standard set forth in

Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  A prison official violates the Fourteenth Amendments if he/she fails to provide an inmate with adequate medical care, such that "their acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs."  Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).

To prevail on a constitutionally inadequate medical care claim, a plaintiff must satisfy two inquiries, one objective and the other subjective.  Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014); Zingg v. Groblewski, 907 F.3d 603, 635 (1st Cir. 2017) (applying objective and subjective components to claim brought by pretrial detainee).  The objective prong requires that the plaintiff prove that he/she had a serious medical need, while the subjective prong requires that the plaintiff prove the defendant acted with deliberate indifference with respect to that serious medical need.  Kosilek, 774 F.3d at 82.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Zingg, 774 F.3d at 635 (citing Kosilek, 774 F.3d at 82); see also Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

Deliberate indifference is a very high standard and requires "that a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw on the inference."  Ruiz-Rosa v. Rullan, 485 F.3d 50, 156 (1st Cir. 2007).  Thus, even if a prison official is aware of a serious risk, "they cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided."  Burrell, 464 F.3d at 8.  To establish deliberate indifference,

therefore, the plaintiff must prove that the failure to provide treatment was purposeful.[2]  Kosilek, 774 F.3d at 83; see also Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment" and "[t]he obvious case would be a denial of needed medical treatment in order to punish the inmate.").

To show such a state of mind, the plaintiff must demonstrate that the defendant had "'actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm." Zingg, 907 F.3d 635 (quoting Watson, 984 F.2d 540). "Such a showing may be made by demonstrating that the defendant provided medical care that was 'so inadequate as to shock the conscience.'" Id. (quoting Feeney v. Corr. Med. Servs. Inc., 464 F.3d 158, 161 (1st. Cir. 2006)); Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991)); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987). "The 'obvious case' that would meet the 'deliberate indifference' standard would be 'a denial of needed medical treatment in order to punish the inmate.'" Zingg, 907 F.3d at 635 (quoting Watson, 984 F.3d at 540). "[D]eliberate indifference may also take the form of 'wanton' or criminal recklessness in the treatment afforded." Id.

Mere disagreements about the appropriate course of medical treatment do not rise to the level of deliberate indifference unless the care received is "so clearly inadequate as to amount to a refusal to provide care." Torraco, 923 F.2d at 234. Accordingly, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal

---

[2] The Nurse Defendants anticipate that the plaintiff will argue that Kingsley v Hendrickson, 576 U.S. 389 (2015) changed the deliberate indifference standard for pretrial detainees by eliminating the subjective prong. The Kingsley decision, however, addressed the standard applicable to a Section 1983 *excessive force claim*, not a deliberately indifference medical care claim. Neither the United States Supreme Court nor the First Circuit have applied the Kingsley standard in the context of a claim for alleged inadequate medical care. In fact, the First Circuit has expressly continued to recognize the objective and subjective prongs in deliberately indifferent medical care claims asserted by pretrial detainees. See Zingg, 907 F.3d at 635.

courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Miranda v. Munoz, 770 F.2d 255, 258 (1st Cir. 1985) (quoting Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981)); see also Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980) (finding that a plaintiff's "allegations [that] simply reflect a disagreement on the appropriate course of treatment. . . may present a colorable claim of negligence, but it falls short of alleging a constitutional violation."). Whether a deprivation is sufficiently serious to violate the constitution is a question of law. See Kosilek, 774 F.3d at 84 (collecting authority).

The plaintiff's deliberate indifference claims against the Nurse Defendants fail because the factual allegations in the Amended Complaint, even if true, fail to establish that each individually named nurse engaged in deliberately indifferent conduct.

### 1. **Nurse Bryanna Gue**

The Amended Complaint contains the following allegations relating to Nurse Bryanna Gue:

- On May 16, 2019, the date Sacco was booked into VSJ, Nurse Gue completed an Intake Mental Health Screening form, a Consent for Treatment form, a Medical Advisement, and a Medical Verification and Reconciliation form. See AC at ¶ 37. Sacco denied drug/alcohol use during the mental health intake process. Id. at p. 8.

- The interdisciplinary nursing notes completed by Nurse Gue for May 16, 2019 state that Sacco had asthma and used an inhaler, and also had a dairy intolerance. Id. The notes again confirm that Sacco denied drug use. Id.

- The Amended Complaint does not allege any contact between Nurse Gue and Sacco after May 16, 2019.

The Amended Complaint is devoid of any allegations which could possibly, much less plausibly, support a claim that Nurse Gue was aware that Sacco had serious medical need or that she failed to reasonably respond to any such risk. Indeed, the allegations confirm that during her single interaction with Sacco, he denied drug or alcohol use so Nurse Gue would have no reason

to know that Sacco was detoxing.  The Amended Complaint is similarly devoid of any

allegations that Sacco exhibited any symptoms that would suggest any need for additional

medical care on May 16, 2019.  Accordingly, the Amended Complaint fails to plausibly assert

deliberate indifference by Nurse Gue and this claim against her must be dismissed.

**2.  <u>Nurse Katelyn Hrubiec</u>**

The Amended Complaint includes the following allegations relating to Nurse Katelyn

Hrubiec:

- On May 17, 2019, Nurse Hurbiec attempted to complete a Medical History and Screening form for Sacco but was unable to do so because he was at a Court appointment.  <u>See</u> AC at p. 9.

- On May 20, 2019 at 8:12 a.m., Nurse Hrubiec performed a detox check on Mr. Sacco.  <u>See</u> AC at p. 12.  Sacco denied vomiting or diarrhea and indicated he had increased his meals and potentially fluids.  <u>Id</u>.  He reported nausea and restlessness.  <u>Id</u>.  His vitals were consistent with his prior readings, with a standing blood pressure at 114/68 and standing pulse of 114.  <u>Id</u>.

- On May 20, 2019 at 12:55 p.m., Nurse Hrubiec completed a Medical History and Screening form for Sacco.  <u>See</u> AC at p. 13.  The form confirmed Sacco's report that he used 5 grams of heroin every day and his last use was on May 15, 2019.  <u>Id</u>.  It stated that Sacco reported that he becomes restless when he stops taking drugs, uses tobacco, and is currently detoxing.  <u>Id</u>.  Nurse Hrubiec noted that Sacco's vitals were consistent with his prior vitals, with blood pressure of 128/84 and pulse of 108.  <u>Id</u>.

These allegations, even when viewed in a light most favorable to the plaintiff, do not

plausibly allege that Nurse Hrubiec was aware that Sacco had a serious medical need or that she

failed to take any reasonable steps based on her observations to provide medical care to Sacco.

<u>Zingg</u>, 907 F.3d at 635 ("To show such a state of mind, the plaintiff must provide evidence that

the defendant had 'actual knowledge of impending harm, easily preventable' [internal citation

omitted] and yet failed to take the steps that would have easily prevented that harm." (quoting

<u>Watson</u>, 984 F.2d at 540).  Similarly, nothing in these allegations would support a finding that

the treatment was "wanton" or "criminally reckless," that Nurse Hrubiec's treatment was "so inadequate so as to shock the conscience," or that the treatment was "so clearly inadequate as to amount to refusal to provide essential care." Id.  At best, the Amended Complaint alleges that Nurse Hrubiec knew that Sacco was detoxing and that he reported nausea and restlessness. There are no allegations that he was demonstrating serious distress or that his condition had deteriorated significantly from his initial intake.  In short, there is nothing conscience shocking or wanton or criminally reckless about her decision not to send him to the hospital or take other emergency action based on these alleged facts.  The allegations, therefore, do not satisfy the deliberate indifference standard.

### 3.  Nurse Dorothea Malo

The Amended Complaint contains the following allegations relating to Nurse Dorothea Malo:

- On May 16, 2019, Nurse Malo ordered an Albuterol inhaler for Sacco.  See AC at p. 9.

- On May 19, 2019, Nurse Malo did a detox check at approximately 5:00 p.m.  See AC at p. 11.  The vital statistics indicated Sacco's blood pressure was 118/78 and his pulse was 125.  Id.  He reported restlessness, agitation, lightheadedness, and no energy.  Id.

These facts, even when construed in a light most favorable to the plaintiff, fail to plausibly allege that Nurse Malo provided deliberately indifferent medical care to Sacco.  The May 16th interaction only involved ordering an Albuterol inhaler for Sacco's asthma.  There is no allegation that Sacco received inadequate treatment for his asthma so the May 16th interaction cannot support a deliberate indifference claim.  The allegations related to the May 19th interaction similarly fails to demonstrate Nurse Malo has actual knowledge of an impending harm and failed to take steps that would have easily prevented that harm.  Zingg v, 907 F.3d at

635.  Instead, the allegations establish that Sacco's vitals remained consistent and that he was experiencing some expected symptoms associated with the detoxification process.  There was no deterioration in his condition from prior assessments that would lead a reasonable nurse to conclude that Sacco was in need of emergency medical care or needed to be transferred from the jail to a hospital.  To hold otherwise, would effectively require that every detoxifying inmate be sent to the hospital as soon as an inmate reports any of the symptoms associated with detoxification.  The allegations, even if true, do not support a finding of wanton or criminally reckless conduct by Nurse Malo or conduct that shocks the conscience or amounts to failure to provide essential care.  Id.  As such, the deliberate indifference claim against Nurse Malo fails as a matter of law.

### 4.  Nurse Kate Coulombe

The Amended Complaint contains the following allegations with respect to Nurse Kate Coulombe:

- On May 20, 2019 at 4:00 p.m., Nurse Kate Coulombe performed a detox check on Sacco.  See AC at p. 13.  Sacco denied vomiting or diarrhea and reported he was drinking fluids and eating.  Id.  He complained of nausea and reported cold sweats.  Id.  No further issues were reported.  Id.  His blood pressure was 112/64 and pulse was 98.  Id.

The allegations directed at Nurse Coulombe are also insufficient to state a plausible deliberate indifference claim.  The Amended Complaint alleges, at best, that during Nurse Coulombe's single interaction with Mr. Sacco, his vitals remained consistent and the only issue he reported was nausea and cold sweats.  Nothing about this interaction would lead a reasonable nurse to conclude that Sacco had a serious medical need or needed emergency care.  Again, there was no deterioration of his condition and nothing rising near the level of wanton, criminally reckless, or conscience shocking behavior.  As a result, the deliberate indifference claim fails as a matter of law.

**5.  Nurse Erica Gustafson**

The Amended Complaint contains the following allegations with respect to Nurse Erica

Gustafson:

- On May 18, 2019 at 10:30 p.m., Nurse Gustafson saw Sacco after he asked to see a nurse due to asthmatic symptoms.  See AC at p. 9-10.  Sacco exhibited no signs of shortness of breath or wheezing.  Id.  He then admitted that he was not having an asthma issue and was not having trouble breathing.  Id.  He stated he was dizzy and wanted to go to the hospital.  Id.  He also stated he was detoxing.  Id.  Nurse Gustafson advised Sacco she was about to do detox checks and would follow up on her return.  Id.  She advised him to relax and stay in bed when possible and gave him a Styrofoam cup for hydration.  Id.

- Nurse Gustafson returned and completed the detox check an hour and fifteen minutes later at 11:45 p.m..  See AC at p. 10.  She checked Sacco's vital signs which showed a stable standing blood pressure of 112/74 and his standing pulse was 128 and sitting pulse 114.  Id.  Sacco reported some nausea and vomiting, but indicated an increased appetite, fluids and sleep. Id.  He continued on detox watch.  Id.

- Nurse Gustafson saw Sacco again a few hours later at 1:00 a.m. on May 19, 2019.  See AC at p. 10.  At that time, Sacco advised Nurse Gustafson that he was detoxing from alcohol and benzos.  Id.  He stated that he only reported heroin before because he "forgot."  Id.  Sacco stated he took benzos without prescription and got it off the street "whenever I can get an[d] as much as possible every day."  Id.  Nurse Gustafson collected a urinal sample, which tested positive for Fentanyl and negative for all other substances.  Id.

- Nurse Gustafson saw Sacco again two hours later at 3:00 a.m.  See AC at p. 10.  At that time, Sacco complained of restlessness and leg cramps and requested medication or to go to the hospital.  Id.  Nurse Gustafson advised Sacco that medication was not given on third shift.  Id.  Sacco was examined again a few hours later by Nurse Morrison and his vitals were stable with standing blood pressure of 112/70 and standing pulse of 122.  Id.

- On May 20, 2019 at 12:15 a.m., Nurse Gustafson performed another detox watch on Sacco See AC at p. 11.  She met with Sacco in the dayroom.  Id.  His standing blood pressure was 112/70 and his standing pulse was 114.  Id.  He was alert and oriented, but complained of aches, cold sweats, dizziness, lightheadedness, restlessness, lack of sleep, and decreased appetite.  Id.  The notes indicate he had increased his fluids.  Id.

The primary accusation lodged against Nurse Gustafson appears to be that she did not send Sacco to the hospital when he asked her to do so on the late evening of May 18th and early morning of May 19th.  The mere fact that an inmate requests that he be taken to the hospital, however, does not mandate that the nurse acquiesce to the request.  Here, Sacco called Nurse Gustafson to his cell on the night of May 18th and falsely reported he was having an asthma attack.  Nurse Gustafson examined him and found no evidence of an asthma issue (no shortness of breath or wheezing).  Sacco then admitted he was not having an asthma-related issue, but claimed he was dizzy and wanted to go to the hospital because he was detoxing.  Nurse Gustafson explained that dizziness was a common symptom of detoxing and suggested that he relax and stay in bed when possible.  She also provided him with a Styrofoam cup so he could stay hydrated, and advised him that she would be back soon to complete the detox check.  There is nothing unreasonable, much less wanton, criminally reckless, or conscience shocking about Nurse Gustafson's treatment of Sacco or her decision not to send him to the hospital after this assessment and based merely on a report of dizziness.

Nurse Gustafson returned to see Sacco a little over an hour later.  At that time, she did a full detox check.  Sacco's vitals remained consistent and there was no deterioration in his condition.  He reported some nausea and vomiting, but an increase in appetite, fluids and sleep.  Nothing in these allegations suggests that Nurse Gustafson knew or should have known that Sacco had a serious medical need that required hospitalization or emergency care.  He appeared to be a normal detoxing inmate.

Nurse Gustafson continued to check on Sacco and returned to his cell around 1:00 a.m. on May 19th.  At this time, Sacco told Nurse Gustafson that he was detoxing on alcohol and benzos, even though he had previously only stated that he was detoxing from heroin.  He claimed

he "forgot." Nurse Gustafson took immediate action and procured a urine sample which showed the presence of Fentanyl only. She returned to Sacco's cell again two hours later to check on him. At that time, Sacco reported restlessness and leg cramps and requested medication or to once again go to the hospital. Sacco's symptoms, even when construed in his favor, do not demonstrate any danger of imminent harm or need for hospitalization or emergent care. Indeed, during the Nurse Morrison's detox check a few hours later, Sacco's vitals remained consistent and he had no significant additional complaints.

The allegations in the Amended Complaint establish that Nurse Gustafson examined Sacco four (4) times between 10:30 p.m. on May 18th and 3:00 a.m. on May 19th and that she provided appropriate care during these visits, including taking his vitals, providing a cup for hydration, doing an appropriate urine test, and discussing detoxification symptoms. Sacco's condition did not deteriorate after the 3:00 a.m. visit as his 8:00 a.m. detox check by Nurse Morrison demonstrates his vitals remained consistent and he had no additional complaints. As a result, the allegation do not support a deliberate indifference claim based on these interactions.

Nurse Gustafson's only other interaction with Sacco was on May 20th at 12:15 a.m. when she did another detox check. Sacco's vitals once again remained consistent. He did complain of aches, cold sweats, dizziness, lightheadedness, restlessness, lack of sleep, and decreased appetite. These are common symptoms of the detoxification process and there is no allegation that merely reporting these symptoms necessitates hospitalization or emergency care. As a result, Nurse Gustafson's decision not to send Sacco to the hospital or provide some other emergency care does not constitute deliberate indifference.

6. __Nurse Luella Bancroft__

The Amended Complaint contains the following allegations relating to Nurse Luella Bancroft:

- Nurse Bancroft examined Sacco on May 20, 2019 at 5:30 a.m. See AC at 12. The notes indicate that Sacco complained of shortness of breath and feeling lightheaded. Id. Nurse Bancroft checked his lungs and they were clear bilaterally and noted that Sacco was in no distress. Id. She recommended that he slow down his breathing. Id. Sacco's vitals were taken by Nurse Hrubiec at 8:12 a.m. and his standing blood pressure was 112/68 and standing pulse 114. Id.

- Nurse Bancroft performed a detox check on Sacco on May 21, 2019 at 12:32 a.m. See AC at p. 14. Her notes state Sacco was diaphoretic and his pupils were dilated. Id. Nurse Bancroft checked his vitals and his standing blood pressure was 100/50 and his standing pulse was 101. Id.

These allegations are also insufficient to plausibly support a finding of deliberate indifference by Nurse Bancroft. During her initial visit on May 20th, she examined Sacco to assess his claims of shortness of breath and feeling lightheaded and concluded that his lungs were clear bilaterally and he was in no distress. She also checked his vitals which once again remained consistent with his vitals since his initial booking. There was no deterioration in his condition. As a result, she did not provide deliberately indifference medical care on May 20th. The allegations relating the May 21st detox check similarly fail to plausibly allege deliberate indifference. While Sacco's blood pressure and pulse had decreased, there is no allegation that they were outside acceptable ranges that would have alerted a reasonable nurse of the need for emergency care. Nurse Bancroft's report that Sacco was diaphoretic (i.e., sweating heavily) and his pupils were dilated similarly does not evidence a need for emergency intervention or providing additional care other than the care provided, much less that the failure to provide additional care constitutes wanton, criminally reckless or conscience shocking conduct. As such, the deliberate indifference claim against Nurse Gustafson fails as a matter of law.

### 7. <u>Nurse Laura Morrison</u>

The Amended Complaint contains the following allegations related to Nurse Laura

Morrison:

- On May 19, 2019 at 8:15 a.m., Nurse Morrison performed a detox check on Sacco.  <u>See</u> AC at p. 11.  Sacco's standing blood pressure was 106/70 and a standing pulse of 122.  <u>Id</u>.  Sacco's only complaint was some reported nausea and vomiting.  <u>Id</u>.

- On May 19, 2019 at 3:15 p.m., Nurse Morrison followed up with Sacco.  <u>See</u> AC at p. 11.  At that time, Sacco reported no complaints of nausea, vomiting or diarrhea and stated he was doing a "little better."  <u>Id</u>.

- On May 21, 2019, Nurse Morrison went Sacco's cell in response to a request for additional medical assistant from Nurse Masci.  <u>See</u> AC at 14.  There are no allegations relating to any care that Nurse Morrison provided after she responded to the request for additional medical assistance.  <u>Id</u>.

The allegations relating to Nurse Morrison's interactions with Sacco on May 19th do not

plausibly support a claim for deliberate indifference.  The allegations establish that during the

detox check at 8:15 a.m., Sacco's vitals remained consistent and his only complaints were some

reported nausea and vomiting.  There is no allegations that these symptoms are not normal

symptoms for the detoxification process or that they necessitated immediate emergency care.

The appropriateness of the care is further demonstrated by the fact that by 3:15 p.m. that same

day, Nurse Morrison reported that Sacco had no complaints of nausea, vomiting or diarrhea and

that he was doing a "little better."  The Amended Complaint fails to plausibly allege that Nurse

Morrison's interactions with Sacco on May 19th rise to the level of deliberate indifference.

The same is true of the May 21st interaction, which involved Nurse Morrison responding

to a request for additional medical assistance at Sacco's cell.  The Amended Complaint does not

identify any act by Nurse Morrison that was improper on May 21st, much less that rose to the

level of deliberate indifference.

**8.  Nurse Nicole Masci**

The Amended Complaint contains the following allegations relating to Nurse Nicole

Masci:

- On May 21, 2019 at 8:15 a.m., Officer Justin Goulding was conducting med pass with Nurse Masci.  See AC at p. 14.   When they arrived at Sacco's cell, his cellmate stated that Sacco was in "rough shape."  Id.  Sacco crawled to the door and said he was "not good."  Id.  Nurse Masci noted he appeared lethargic and nauseated and vomited green bile.  Id.  Nurse Masci immediately requested more medical staff for assistance.  Id.  Nurse Morrison arrived soon afterwards, along with PA Christopher Schwieger, who was at VSJ on other matters.  Id.  911 was called and PA Schwieger started chest compressions as Sacco was no longer responsive.  Id.  Nurse Masci administered Narcan.  Id.  First aid continued until EMS arrived at 8:34 a.m. and assumed care  Id.  EMS transported Sacco to Elliot Hospital.  Id. at p. 15.

Finally, the allegations in the Amended Complaint also fail to state a plausible claim for

deliberate indifference against Nurse Masci.  Nurse Masci's sole interaction with Sacco was on

the morning of May 21st when she found Sacco in distress in his cell during the morning

medication pass.  The allegations confirm that Nurse Masci immediately requested more medical

staff for assistance, to which Nurse Morrison and PA Schwieger responded.  There are no

allegations that any of the care Nurse Masci (or anyone else) provided to Sacco at his cell that

morning was inadequate, much less wanton, criminally reckless or conscience shocking.  In fact,

the allegations confirm that within minutes 911 was called, chest compressions were started, and

Narcan administered.  EMS arrived within 20 minutes of Nurse Masci's initial arrive at Sacco's

cell.  These facts fall far short of deliberate indifference.

**B.    Plaintiff's Medical Negligence Claim (Count IV) Against Hillsborough County and the Nurse Defendants Fails as a Matter of Law**

RSA 507-B is designed "to limit [governmental unit] liability arising from tort suits."

Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 697 (2013); Cannata v. Town of Deerfield,

132 N.H. 235, 243 (1989).  In this regard, RSA 507-B:5 provides immunity to "governmental

unit[s]" for "any action to recover for bodily injury, personal injury or property damages except as provided by this chapter or as is provided or may be provided by other statute."  See RSA 506-B:5.  A "governmental unit" means "any political subdivision within the state including any county, city, town, precinct . . . or departments or agencies thereof, or any other body corporate and politic within the state, but does not include the state or any department or agency thereof."  See RSA 507-B:1, I.  Hillsborough County, thus, qualifies as "governmental units" for purposes of RSA 507-B:5.  The plaintiff's state law claims all seek to recover damages for "bodily injury" and/or "personal injury" to Sacco purportedly caused by the negligent conduct of the Nurse Defendants.  Consequently, Hillsborough County is entitled to immunity unless another statue specifically creates a basis for liability.

RSA 507-B:2 creates a limited exception to immunity for "governmental units" for negligence-based claims, and states that governmental units may be held liable for "bodily injury, personal injury or property damage caused by its fault or fault attributable to it arising out of ownership, occupation, maintenance or operation of motor vehicles and all premises."  See RSA 507-B:2.  "Under a plain reading of the statute, RSA 507-B:2 provides an exception for fault-based claims only when there is a nexus between the claim and the governmental unit's ownership, occupation, maintenance, or operation of a motor vehicle or premises."  Dichiara, 165 N.H. at 696-97 (emphasis added).

The New Hampshire Supreme Court previously considered the scope of RSA 507-B:2 and held that the nexus requirement is not satisfied merely because the incident giving rise to the claim occurred on premises owned by a governmental unit, explaining that:

> [W]hen a vehicle acts as merely the situs of an injury, the causal connection
> between the injury and the use of the vehicle is too tenuous to support coverage. .
> . . By contrast, when the injuries stem from an act that is part of using a motor
> vehicle, the causal connection is established.  The same is true for the premises

exception: <u>simply because the alleged injury occurs in connection with the
enterprise conducted on the defendant's premises does not mean that it arose out
of the defendant's operation of the physical premises</u>.

<u>Lamb v. Shaker Reg'l Sch. Dist.</u>, 168 N.H. 47, 49 (2015) (emphasis added).  In <u>Lamb</u>, the

plaintiff sued the defendant school district after the plaintiff's child was "slammed to the ground"

when another student tackled him while playing football at lunch recess.  <u>Id</u>. at 48.  The student

was later found wandering the halls disoriented and was taken to the nurses office.  <u>Id</u>.  The

nurse contacted the plaintiff to pick up her son, but did not call for an ambulance.  <u>Id</u>.  The

plaintiff took the child to the emergency room where he was diagnosed with a concussion.  <u>Id</u>.

The plaintiff claimed that the district's decision not to call for an ambulance constituted

negligence.  <u>Id</u>.

 The district moved to dismiss the negligence claim pursuant to RSA 507-B on the

grounds that the claim did not arise out of the ownership, operation, maintenance or occupation

of premises and, thus, the district was immune from liability.  <u>Id</u>. at 49.  The plaintiff argued that

the claim did arise out of the "operation . . . of premises" because providing nursing services was

part of the district's operations, and urged the court to broadly construe this phrase to include all

acts related to the "operation of a business or enterprise located on those premises."  <u>Id</u>. at 50.

The New Hampshire Supreme Court rejected the plaintiff's broad construction of the statute and

held that the term "premises," as used in the statute, is limited to the "real property and any

structures built upon it – that is the <u>physical property</u>."  <u>Id</u>. at 51 (emphasis added).  The

exception to immunity in RSA 507-B:2, thus, requires some defect in the "physical premises"

and does not apply to claims arising out of the general operations of the business or enterprise.

<u>Id</u>.  The Court held that interpreting the statute in the broad manner urged by the plaintiff to

encompass all operations of a business or enterprise "would effectively void the immunity

granted by RSA 507-B:5." Id. (citing Dichiara, 165 N.H. at 696 (declining to adopt interpretation of RSA 507-B:2 that would "provide a blanket exception to RSA 507-B:5")).

This Court has relied on the Lamb decision to dismiss similar negligence-based state law claims against correctional facilities and their employees.  For example, in Martineau v. Antilus, 2017 WL 2693491, 2017 DNH 127 (D.N.H. 2017), this Court dismissed a pretrial detainee's negligence-based state law claims against Hillsborough County and three corrections officers based on the immunity conferred by RSA 507-B.  In doing so, the Martineau Court recognized that the plaintiff's claim did not arise out of the operation of the "physical premises" and that in Lamb the "NHSC expressly rejected the plaintiff's argument that the phrase 'operation of . . . all premises' in RSA 507-B:2 included the 'operation of a business or enterprise located on the premises.'"  Id. at 8.  The Court went on to conclude that:

> In Lamb, the NHSC made clear that RSA 507-B:2 is limited to claims that have a nexus to the County's operation of its physical premises.  See 168 N.H. at 51. Although County employees caused Martineau's injuries in a county-operated facility, his injuries were wholly unrelated to the physical premises of the Jail.  Thus, Martineau's state law claims do not fall within the 507-B:2 exception to municipal immunity.

Id. at 9-10 (emphasis in original).  See also Maryea v. Braggs, 2016 WL 1060226, 2016 DNH 055 (2016) (dismissing inmate's negligence-based claims against correctional facility for failure to prevent an assault based on the immunity in RSA 507-B:5 because the plaintiff did not provide any evidence establishing a causal nexus between the claimed injury and the jail's operation of its physical premises).

This Court reached the same conclusion more recently in the closely analogous case of Donlon v. Hillsborough Cty., 2019 WL 2062436 (D.N.H. 2019).  In Donlon, the plaintiff brought a negligence claim against the County alleging that the County provided negligent medical care

22

by "failing to adequately monitor her, treat her for benzodiazepine withdrawal, and promptly obtain her emergency medical care." Id. at *25. The County moved to dismiss the claim based on the grant of immunity in RSA 507-B:5. Id. The Court agreed with the County and held that the negligence claim "plainly fell within the reach" of the immunity granted in RSA 507-B:5, and the plaintiff did not cite any exception to immunity that would apply to her claim. Id. As a result, the County was immunity from liability for the medical negligence claim.

Here, the plaintiff's negligence-based state law claims do not arise out of the operation of Hillsborough County's physical premises. Instead, the plaintiff's negligence claim, like the plaintiff's claim in Lamb, Martineau, Donlon, and Maryea, arise out of Hillsborough County's general business operations – i.e., its provision of medical services for inmates and detains. In fact, the plaintiff's claim that Sacco received negligent medical care because he was not sent to the hospital based on the nurses' observations is nearly identical to the Lamb plaintiff's claim that the school nurse negligently failed to call an ambulance for a student. The Lamb decision establishes that "governmental units" such as Hillsborough County are immune from such claims under RSA 507-B:5. Accordingly, the plaintiff's negligence claim against Hillsborough County fail as a matter of law.

The statutory immunity in RSA 507-B conferred on governmental units extends to present and former employees who are "acting within the scope of [their] office and reasonably believed in the legality of [their] actions." See RSA 507-B:4. The Amended Complaint acknowledges that the Nurse Defendants were employed by Hillsborough County and were acting within the scope of their employment when they examined and provided treatment to Sacco. There are no allegations that any of the Nurse Defendants did not reasonably believe that the medical care provided to Sacco while at the VSJ was provided in an unlawful manner. At

best, the Amended Complaint expresses disagreement with the adequacy of the treatment

provided.  As a result, each of the Nurse Defendants are also entitled to immunity with respect to

the negligence claim asserted against them in the Amended Complaint.

Respectfully submitted,

HILLSBOROUGH COUNTY AND NURSE
DEFENDANTS

By their attorneys,

DEVINE, MILLIMET & BRANCH
PROFESSIONAL ASSOCIATION

Dated:  March 15, 2021          By:   /s/ Donald L. Smith
                                                      Donald L. Smith, Esq. (Bar #13525)
                                                      111 Amherst Street
                                                      Manchester, NH 03101
                                                      Telephone: 603-669-1000
                                                      dsmith@devinemillimet.com

### CERTIFICATE OF SERVICE

I, Donald L. Smith, hereby certify that a copy of the foregoing was served this day on
counsel of record, via the Court's Electronic Filing System.

/s/ Donald L. Smith
Donald L. Smith